UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

RONALD LARKINS, also known as
Ronald James Larkins,

                              Petitioner,

                                                                9:18-CV-1491
v.                                                              (DNH/ML)

JOSEPH NOETH,

                              Respondent.
_____

APPEARANCES:                                            OF COUNSEL:

RONALD LARKINS
   Petitioner, *Pro Se*
Auburn Correctional Facility
Post Office Box 618
Auburn, New York 13021

LETITIA A. JAMES                                        JAMES F. GIBBONS, ESQ.
New York State Attorney General                         Assistant Attorney General
   Counsel for Respondent
28 Liberty Street
New York, New York 10005

MIROSLAV LOVRIC, United States Magistrate Judge

## REPORT-RECOMMENDATION

On December 26, 2018, Ronald Larkins ("Petitioner") filed this petition for a writ of

habeas corpus pursuant to 28 U.S.C. § 2254, challenging a judgment of conviction in Cayuga

County Court from 2015, based on a jury verdict of three counts of first degree robbery, two

counts of first degree criminal use of a firearm, two counts of second degree criminal possession

of a weapon, and two counts of third degree criminal possession of a weapon.[1]  (Dkt. No. 1 Petition ("Pet.") at 1-2.)  In his Petition, Petitioner argues that he is entitled to habeas corpus relief because (1) he was subjected to an unlawful search and seizure of his person while traveling on the New York State Thruway (*id*. at 5-7); and (2) his trial counsel was ineffective and the trial court improperly denied his pre-trial request for different assigned counsel after his trial counsel expressed that Petitioner would likely not be acquitted of the pending criminal charges at trial (*id*. at 7-8).  For the reasons set forth below, I recommend that the Petition be denied and dismissed.

# I.    PROCEDURAL HISTORY

## A.    New York State Proceedings

### 1.    Grand Jury Indictment

On October 6, 2010, a grand jury in Cayuga County passed up an indictment charging Petitioner with three counts of robbery in the first degree (New York Penal Law § 160.15), two counts of criminal use of a firearm in the first degree (New York Penal Law § 265.09), two counts of criminal possession of a weapon in the second degree (New York Penal Law § 265.03), and two counts of criminal possession of a weapon in the third degree (New York Penal Law § 265.02).  (Dkt. No. 10 at 71-73.)

### 2.    First Trial and Appeals to New York State Courts

On December 10, 2010, Petitioner filed an omnibus motion in Cayuga County seeking, *inter alia*, suppression of all property seized during his arrest, arguing that he "gave no consent

---

[1]    Petitioner was initially convicted of these crimes in 2011; however, the Appellate Division, Fourth Department reversed the judgment and granted a new trial.  *People v. Larkins*, 108 A.D.3d 1210 (N.Y. App. Div. 4th Dep't 2013), *lv. denied* 23 N.Y.3d 1022 (N.Y. 2014).  At the conclusion of the retrial, Petitioner was ultimately convicted.  *Larkins*, 153 A.D.3d at 1584.

to any search of his person or property, nor was there any contraband visible within his sight, reach or control at the time of his arrest." (Dkt. No. 10 at 77-84.) On January 4, 2011, the trial court heard arguments on the omnibus motion. (Dkt. No. 11 at 1-17.) On February 25, 2011, the trial court denied Petitioner's request for a suppression hearing, holding that his "mere assertion that he did not consent to any search and that any unspecified evidence recovered from his person at the time of his arrest was seized illegally does not create an issue of fact as to whether the search and seizure were the result of a Fourth Amendment violation." (Dkt. No. 10 at 129-30.) On December 23, 2011, judgment was entered, which convicted Petitioner, upon a jury verdict, of each count in the indictment. (*Id*. at 747.)

On July 19, 2013, the New York Supreme Court, Appellate Division, Fourth Department, unanimously reversed the judgment and granted a new trial. (*Id*. at 747-748); *People v. Larkins*, 108 A.D.3d 1210 (N.Y. App. Div. 4th Dep't 2013), *lv. denied* 23 N.Y.3d 1022 (N.Y. 2014).

### 3.    Petitioner's Motion for Appointment of New Counsel

On September 16, 2014, at a conference with the trial court, the court indicated that it had received correspondence from Petitioner, dated September 5, 2014, stating that he was seeking appointment of new assigned counsel. (Dkt. No. 11 at 103.)[5] Petitioner orally renewed that motion and argued that he had reservations about his assigned counsel—Joseph Sapio—during the first trial, his fears were confirmed when he was convicted of all charges after the first trial, and Mr. Sapio expressed to Petitioner that "he doesn't believe that . . . he can win at trial." (*Id*. at 102-04.) Mr. Sapio stated, *inter alia*, that he had met with Petitioner and explained concerns regarding Petitioner's decision to forgo a plea deal, weaknesses in the People's proof, and

---

[5]    The record does not contain Petitioner's letter to the trial court, dated September 5, 2014, seeking new appointed counsel. (*See generally* Dkt. No. 10; Dkt. No. 11; *see also* Dkt. No. 9, Attach. 1 at 5, n.1; Dkt. No. 16 at 1-2.)

strengths in the People's proof.  (*Id*. at 104-06.)  In addition, Mr. Sapio clarified that he "didn't say that [he] could not win[,] . . . would not win[,] . . . or would not try [his] best."  (*Id*.)  The trial court denied Petitioner's motion and held that Petitioner "does not like [Mr. Sapio's] legal advice and [the court] see[s] that as more of a strategic disagreement versus anything else."  (*Id*. at 108-09.)

### 4.    Second Trial and Appeals to New York State Courts

On January 9, 2015, after a trial, Petitioner was convicted by a second jury, of all charges in the indictment.  (Dkt. No. 10 at 69, 499-501; Dkt. No. 11 at 796-800); *Larkins*, 153 A.D.3d at 1584.

On September 29, 2017, the New York Supreme Court Appellate Division Fourth Department, unanimously affirmed Petitioner's conviction.  (Dkt. No. 10 at 858-62); *Larkins*, 153 A.D.3d at 1584.  More specifically, the Appellate Division held, *inter alia*, that the trial court did not err in denying, without a hearing, that portion of Petitioner's omnibus motion seeking to suppress evidence because "his 'papers fail[ed] to set forth sworn allegations of fact supporting the motion."  (*Id*. at 859.)  The Appellate Division also rejected Petitioner's argument that counsel was ineffective by failing to vigorously pursue the suppression issue because Petitioner failed to show that counsel was able to make a more detailed suppression motion or that such a motion would have been successful.  (*Id*. at 859-60.)

On December 20, 2017, the New York Court of Appeals denied leave to appeal.  (Dkt. No. 10 at 869); *Larkins*, 153 A.D.3d at 1584, *lv. denied 30* N.Y.3d 1061 (N.Y. 2017).

### B.    Proceedings in This Court

On December 26, 2018, Petitioner commenced this proceeding by the filing of a verified Petition for writ of habeas corpus.  (Dkt. No. 1.)  On January 3, 2019, United States Magistrate

Judge David E. Peebles issued a Decision and Order pursuant to Local Rules of Procedure for Section 2254 cases and Section 2255 proceedings Rule 1.1(e)[6] directing, *inter alia*, Respondent to answer the Petition.  (*See generally* Dkt. No. 4.)  On May 20, 2019, Respondent filed an answer to the Petition, a memorandum of law supporting her answer, and a compilation of the relevant state court records that were helpfully organized and indexed for the convenience of the Court and the parties.  (Dkt. Nos. 9, 10, 11.)

On May 30, 2019, Petitioner requested that Respondent produce unidentified transcripts, motions, and hearing records so that he could properly file a reply ("Traverse") to Respondent's answer.  (Dkt. No. 13.)  On May 31, 2019, the Court denied Petitioner's motion holding that Respondent is responsible for attaching portions of the transcripts which are relevant, Respondent had done so, and Petitioner failed to specify what Respondent omitted from the record and why that omission was important for Petitioner to successfully file a Traverse.  (Dkt. No. 14.)  On June 11, 2019, Petitioner renewed his motion for Respondent to produce unidentified transcripts, motions, and hearing records.  (Dkt. No. 15.)  On June 12, 2019, Respondent filed a response that directed Petitioner to those portions of the record containing the documents that he requested and included courtesy copies of those documents.  (Dkt. No. 16 at 1-2.)  On July 2, 2019, the case was re-assigned to the undersigned for further proceedings.  (Dkt. No. 18.)  On July 15, 2019, Petitioner filed a Traverse.  (Dkt. No. 19.)  On July 16, 2020, Petitioner's motion to produce was denied as moot.  (Dkt. No. 20.)

This matter, which is now fully briefed, has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c).  *See* Fed. R. Civ. P. 72(b).

---

[6]    This was previously N.D.N.Y. L.R. 72.4(e).

### C.    Parties' Briefings

#### 1.    Respondent's Answer and Memorandum of Law

Generally, Respondent makes the following two arguments in support of her answer: (1) Petitioner's Fourth Amendment claim is not cognizable; and (2) Petitioner's ineffective assistance of counsel claim is (a) unexhausted and meritless, and (b) to the extent that Petitioner renews an exhausted claim, the state court's adjudication was not unreasonable. (*See generally* Dkt. No. 9, Attach. 1 at 11-21 [Resp't's Mem. of Law].)

First, Respondent argues that Petitioner failed to establish that New York "provided no corrective procedures at all" to address his Fourth Amendment claim. (*Id*. at 11-12.) Moreover, Respondent argues that federal courts have approved New York Criminal Procedure Law Article 710 for litigating Fourth Amendment claims. (*Id*.) Further, Respondent argues that Petitioner cannot claim that there was an unconscionable breakdown in the process because (a) he raised Fourth Amendment claims in an omnibus motion before the first trial which was denied based on his failure to make specific factual allegations that would have entitled him to relief, and (b) the Appellate Division rejected this argument noting that he failed to allege facts that would add up to a constitutional violation. (*Id*. at 11-12.)

Second, Respondent argues that Petitioner's ineffective assistance of counsel claim is unexhausted and without merit, and, to the extent that he renews an exhausted claim, the state court's adjudication was not unreasonable. (*Id.* at 13-21.) More specifically, Respondent argues that Petitioner did not submit to the appellate courts his claim that the trial court improperly denied his motion for substitution of counsel, and thus, the claim is unexhausted. (*Id*. at 15-17.) In addition, Respondent argues that the Court should not grant a stay or hold the claim in abeyance so that Petitioner may exhaust his state court remedies because Petitioner has not

6

requested such relief and the unexhausted claim is plainly meritless. (*Id*.) Respondent argues that defense counsel was obliged to inform Petitioner of his professional opinion regarding the likelihood of success at trial, Petitioner was not prejudiced by defense counsel's advice, and Petitioner identifies no flaw in defense counsel's actions. (*Id*.) Moreover, Respondent argues that to the extent this Court liberally construes the Petition as asserting that defense counsel was ineffective for failing to pursue the suppression issue more vigorously, that claim should be denied because the appellate division's denial of the claim did not unreasonably apply *Strickland*. (*Id*. at 17-21.) Respondent argues that the Appellate Division properly held that defense counsel was not ineffective because there was no indication that a more detailed suppression motion would have been granted and Petitioner was not prejudiced by defense counsel's actions. (*Id*.)

### 2.    Petitioner's Traverse

Petitioner makes the following three arguments in his Traverse: (1) he was not provided an opportunity to fairly litigate his suppression claim because the trial court denied his request for a *Mapp* hearing, where he would have established the lack of- probable cause for, and consent to, the search, (2) his appellate counsel argued that defense counsel was ineffective in failing to pursue the suppression issue, and (3) he raised an ineffective assistance of counsel claim before the trial court and established more than a "difference of opinion in trial strategy with his assigned counsel." (Dkt. No. 19 at 21-26 [Pet.'s Traverse].)

## II.    LEGAL STANDARDS

### A.    Standard Governing Review of a *Habeas Corpus* Petition

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996) a federal court may grant habeas corpus relief with respect to

a claim adjudicated on the merits in state court only if, based upon the record before the state court, the adjudication of the claim (1) was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (citing 28 U.S.C. § 2254(d)); *Premo v. Moore*, 562 U.S. 115, 120-21 (2011); *Thibodeau v. Portuondo*, 486 F.3d 61, 65 (2d Cir. 2007) (Sotomayor, J.).

The AEDPA "imposes a highly deferential standard for evaluating state-court rulings' and 'demands that state-court decisions be given the benefit of the doubt." *Felkner v. Jackson*, 562 U.S. 594, 598 (2011) (per curiam) (quoting *Renico v. Lett*, 559 U.S. 766, 773 (2010)); *accord, Cullen*, 563 U.S. at 181. Federal habeas courts must presume that the state court's factual findings are correct "unless applicants rebut this presumption with 'clear and convincing evidence.'" *Schriro v. Landrigan*, 550 U.S. 465, 473-74 (2007) (quoting 28 U.S.C. § 2254(e)(1)); *see also Boyette v. Lefevre*, 246 F.3d 76, 88 (2d Cir. 2001). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro*, 550 U.S. at 473 (citing *Williams v. Taylor*, 529 U.S. 362, 410 (2000)).

As required by section 2254, on federal habeas review, a court may only consider claims that have been adjudicated on the merits by the state courts. 28 U.S.C. § 2254(d); *Cullen*, 563 U.S. at 181; *Washington v. Schriver*, 255 F.3d 45, 52-55 (2d Cir. 2001). The Second Circuit has held that, when a state court adjudicates a claim on the merits, "a federal habeas court must defer in the manner prescribed by 28 U.S.C. § 2254(d)(1) to the state court's decision on the federal claim—even if the state court does not explicitly refer to either the federal claim or to relevant

federal case law." *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001); *see Willson v. Sellars*, 138 S. Ct. 1188, 1192 (2018) (holding that a federal habeas court reviewing an unexplained state-court decision on the merits "should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning," but that "the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision").

**B.    Legal Standard Governing Fourth Amendment Search and Seizure Claims in Habeas Corpus Proceedings**

The Supreme Court has held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 481-82 (1976); *see McPhail v. Warden*, 707 F.2d 67, 69 (2d Cir. 1983) (*citing Gates v. Henderson*, 568 F.2d 830, 837 (2d Cir. 1977) (en banc)) ("This court, sitting en banc, has made clear that a fourth amendment claim may not be considered by a federal habeas corpus court if the state has provided an opportunity fully and fairly to litigate it.").  "The focus of this standard is the word 'opportunity,' and *Gates* means only that the state must make available 'a statutory mechanism' for suppression of evidence tainted by an unlawful search or seizure." *McPhail*, 707 F.2d at 67 (citing *Gates*, 568 F.2d 830).

The Second Circuit has stated that "review of fourth amendment claims in habeas petitions would be undertaken in only one of two instances: (a) if the state has provided no corrective procedures at all to redress the alleged fourth amendment violations; or (b) if the state has provided a corrective mechanism, but the defendant was precluded from using that

mechanism because of an unconscionable breakdown in the underlying process." *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992) (citing *Gates*, 568 F.2d at 840.)

C.    **Legal Standard Governing Exhaustion of Remedies**

Before seeking federal habeas relief, a petitioner must exhaust available state remedies or establish either an absence of available state remedies or that such remedies cannot adequately protect his rights. *Aparicio v. Artuz*, 269 F.3d 78, 89 (2d Cir. 2001) (quoting 28 U.S.C. § 2254(b)(1)); *Ellman v. Davis*, 42 F.3d 144, 147 (2d Cir. 1994). The exhaustion doctrine recognizes "respect for our dual judicial system and concern for harmonious relations between the two adjudicatory institutions." *Daye v. Attorney Gen. of New York*, 696 F.2d 186, 191 (2d Cir. 1982); *see also Galdamez v. Keane*, 394 F.3d 68, 72 (2d Cir. 2005) ("Comity concerns lie at the core of the exhaustion requirement."). Although both federal and state courts are charged with securing a state criminal defendant's federal rights, the state courts must initially be given the opportunity to consider and correct any violations of federal law. *Galdamez*, 394 F.3d at 72 (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999)). "The chief purposes of the exhaustion doctrine would be frustrated if the federal habeas court were to rule on a claim whose fundamental legal basis was substantially different from that asserted in state court." *Daye*, 696 F.2d at 192 (footnote omitted).

This exhaustion requirement is satisfied if the federal claim has been "fairly present[ed]" to the state court. *Dorsey v. Kelly*, 112 F.3d 50, 52 (2d Cir. 1997) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)). A claim has been "fairly presented" if the state court was apprised of "both the factual and the legal premises of the claim [the petitioner] asserts in federal court." *Daye*, 696 F.2d at 191. Thus, "the nature or presentation of the claim must have been likely to alert the court to the claim's federal nature." *Id.* at 192.

10

Significantly, "[t]he exhaustion doctrine 'requires only that a petitioner present his claim once on direct or collateral review.'"  *Salahuddin v. Strack*, 97-CV-5789, 1998 WL 812648, at *5 (E.D.N.Y. Aug. 12, 1998) (quoting *Sanford v. Senkowski*, 791 F. Supp. 66, 69 (E.D.N.Y. 1992)); *see Fielding v. LeFevre*, 548 F.2d 1102, 1106 (2d Cir. 1977) ("In order to meet the exhaustion requirement, a petitioner must have presented his claim to the state courts at least once, on direct or collateral review.").  "Therefore, even if a claim is not raised at trial or on direct appeal, a claim pursued throughout a full round of state post-conviction proceedings is exhausted."  *Salahuddin*, 1998 WL 812648, at *5 (citing, *inter alia, Castille v. Peoples*, 489 U.S. 346, 350-51 (1989)); *see also Harvey v. Portuondo*, 98-CV-7371, 2002 WL 2003210, at *5 (E.D.N.Y. Aug. 5, 2002).

**D.    Legal Standard Governing Ineffective Assistance of Counsel**

Under the well-established standard governing ineffective assistance of counsel claims,

> the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *accord, Murden v. Artuz*, 497 F.3d 178, 198 (2d Cir. 2007).

To be constitutionally deficient, the attorney's conduct must fall "outside the wide range of professionally competent assistance."  *Strickland,* 466 U.S. at 690; *accord, Rivas v. Fischer*, 780 F.3d 529, 547 (2d Cir. 2015).  An attorney's performance is judged against this standard in light of the totality of the circumstances and from the perspective of counsel at the time of trial, with every effort made to "eliminate the distorting effects of hindsight[.]"  *Strickland*, 466 U.S. at

689; *see also Rivas*, 780 F.3d at 547 (quoting *Strickland*, 466 U.S. at 689) (noting the court's "scrutiny of counsel's performance must be 'highly deferential'").

Addressing the second prong of the *Strickland* test, courts have generally held that prejudice is established by showing that there is a "reasonable probability" that, but for the attorney's deficient conduct, "the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694; *see also Murden*, 497 F.3d at 198 ("Under *Strickland*, a defendant must show that . . . there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (quotation marks omitted)).

## III.    ANALYSIS

For the reasons stated in Respondent's memorandum of law, I find that Petitioner's unlawful search and seizure claim is unreviewable, and his ineffectiveness claim is (a) unexhausted and without merit, and (b) to the extent that it is exhausted, the state courts' adjudication was not unreasonable.  (Dkt. No. 9, Attach. 1 at 11-21.)  As a result, I recommend that the claims be denied and the Petition be dismissed.

### A.    Whether Petitioner's Claim that He was Subjected to an Unlawful Search and Seizure Under the Fourth Amendment is Unreviewable

After carefully considering the matter, I answer this question in the affirmative for the reasons stated in Respondent's memorandum of law.  (Dkt. No. 9, Attach. 1 at 11-13.)  The following is intended to supplement, but not supplant, those reasons.

The opportunity to litigate a suppression issue "means only that the state must make available 'a statutory mechanism' for suppression of evidence tainted by an unlawful search or seizure." *McPhail*, 707 F.2d at 69 (quotation omitted).  New York has complied with the requirements in *Capellan*.  First, "[F]ederal courts have approved New York's procedure for litigating Fourth Amendment claims, embodied in N.Y. Crim. Proc. Law § 710.10 *et seq.*

(McKinney 1984 & Supp. 1988), as being facially adequate." *Holmes v. Scully,* 706 F. Supp. 195, 201 (E.D.N.Y. 1989).  Second, Petitioner was not precluded from pursuing his Fourth Amendment claim through any "unconscionable breakdown in the underlying process."

As a result, I recommend that Petitioner's claim that he was subjected to an unlawful search and seizure while traveling on the New York State Thruway be denied as unreviewable.

### B.    Whether Petitioner's Ineffective Assistance of Counsel Claim Should Be Dismissed

After carefully considering the matter, I answer this question in the affirmative for the reasons stated in Respondent's memorandum of law.  (Dkt. No. 9, Attach. 1 at 13-21.)  The following is intended to supplement, but not supplant, those reasons.

#### 1.    Substitution of Counsel

To the extent Petitioner claims that the trial court improperly denied his pre-trial request for the substitution of counsel because his trial counsel was ineffective by expressing his belief that Petitioner would not likely be acquitted of the pending criminal charges, that claim is unexhausted.

On appeal, Petitioner argued that his trial counsel was ineffective for "failing to more vigorously pursue the suppression issue."  (Dkt. No. 10 at 47, 859.)  However, Petitioner did not present to the state appellate courts his claim that his trial counsel, Mr. Sapio, was ineffective because Mr. Sapio stated that he did not think Petitioner would be successful at trial.  (*See generally* Dkt. No. 10 at 1-57.)

As a result, I find that this claim is unexhausted.

In addition, for the reasons stated in Respondent's memorandum of law, I find that this claim is plainly meritless.  (Dkt. No. 9, Attach. 1 at 15-17.)  As a result, I recommend that the

Court decline to exercise its discretion to grant a stay or abeyance so that Petitioner may exhaust his state-court remedies on this unexhausted claim.

### 2.    Vigorous Pursuit of the Suppression Issue

To the extent Petitioner claims that Mr. Sapio was ineffective for failing to more vigorously pursue the suppression issue, that claim should be denied because the state appellate court did not unreasonably apply *Strickland*. *Strickland*, 466 U.S. at 694. The state appellate court rejected Petitioner's argument on appeal that defense "counsel was ineffective in failing to more vigorously pursue the suppression issue." (Dkt. No. 10 at 859-60.) More specifically, the state appellate court held that Petitioner had "not shown that defense counsel was able to make a more detailed suppression motion, or that such a motion 'if made, would have been successful,' and thus he has not 'establish[ed] that defense counsel was ineffective in failing to make such a motion.'" (*Id*. (quoting *People v. Borcyk*, 60 A.D.3d 1489, 1490 (N.Y. App. Div. 4th Dep't 2009)). For the reasons stated in Respondent's memorandum of law, the state appellate court's determination was reasonable and Petitioner has not identified any basis upon which to conclude that the Fourth Amendment was violated. (Dkt. No. 9, Attach. 1 at 17-21.) In addition, as set forth in Respondent's memorandum of law, Petitioner's assertion that if the Fourth Amendment claim were "somehow lost, waived, or not preserved by trial counsel, it necessarily follows that such counsel was ineffective" (Dkt. No. 10 at 47), is unavailing because the trial court and state appellate court decided Petitioner's Fourth Amendment claim on the merits.

As a result, I recommend that Petitioner's ineffective assistance of counsel claim be dismissed.

IV.     **CERTIFICATE OF APPEALABILITY**

To appeal a final order denying a request by a state prisoner for habeas relief, a petitioner must obtain from the court a certificate of appealability ("COA").  28 U.S.C. § 2253(c)(1)(A); *see also* Fed. R. App. P. 22(b)(1) ("[T]he applicant cannot take an appeal unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c).").  In the absence of a COA, a federal court of appeals lacks jurisdiction to entertain an appeal from the denial of a habeas petition.  *Hoffler v. Bezio*, 726 F.3d 144, 152 (2d Cir. 2013).  A COA may issue only "if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2); *Hoffler*, 726 F.3d at 154.  A petitioner may demonstrate a "substantial showing" if "the issues are debatable among jurists of reason; . . . a court could resolve the issues in a different manner; or . . . the questions are adequate to deserve encouragement to proceed further."[10]  *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983) (quotation marks omitted).

In this instance, I find that jurists of reason would not find it debatable as to whether the Petition in this matter is meritorious.  Accordingly, I recommend against the issuance of a COA.

**ACCORDINGLY**, it is

**RECOMMENDED** that the Petition be **DENIED and DISMISSED**, and that a certificate of appealability not be issued to Petitioner; and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this Report and Recommendation on the parties, along with copies of the unpublished decisions cited herein in

---

[10]     A similar standard applies when a COA is sought to challenge the denial of a habeas petition on a procedural basis. *See Slack v. McDaniel*, 529 U.S. 473, 478 (2000) ("[A] COA should issue . . . if the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.").

accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

 **NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[11]  Such objections shall be filed with the Clerk of the Court.  **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW</u>**.  28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

Dated: November   9 , 2021
   Binghamton, New York

Miroslav Lovric
U.S. Magistrate Judge

---

[11] If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).